UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARATHON PETROLEUM COMPANY LP,

Plaintiff,

v.

BIDWELL FOLSOM STORE, INC.,

Defendants.

No.  2:23-cv-02678-DAD-AC

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

(Doc. No. 24)

This matter is before the court on plaintiff's motion for summary judgment in its favor. (Doc. No. 24.)  On August 27, 2025, the pending motion was taken under submission pursuant to Local Rule 230(g).  (Doc. No. 27.)  For the reasons explained below, plaintiff's motion for summary judgment will be granted.

**BACKGROUND**

This is a breach of contract action stemming from a series of agreements made between the parties regarding operation of a retail facility which sold gasoline.  (Doc. No. 1.)  Plaintiff Marathon is a limited partnership which has previously acquired one of the alleged parties to the series of agreements, Tesoro Refining & Marketing Company ("Tesoro").  (*Id.* at ¶¶ 1, 12–14.)

/////

/////

1

**A.    Factual Background[1]**

On April 1, 2017, defendant Bidwell Folsom ("Bidwell") and Tesoro entered into the Retail Sales Agreement ("RSA").  (SUF at ¶ 1.)  Plaintiff is the successor to Tesoro with respect to the RSA and all other agreements discussed in this order.  (*Id.*)  The RSA required defendant Bidwell to purchase a minimum quantity of 12,000,000 gallons of gasoline and diesel fuel products during the term of the agreement.  (*Id.*)  Also on April 1, 2017, Tesoro entered into an Incentive Agreement with defendant Bidwell, in which plaintiff offered and defendant accepted a financial incentive of $300,000 should defendant Bidwell operate a retail station for the term of the RSA under certain terms and conditions.  (*Id.* at ¶ 2.)  The Incentive Agreement required defendant Bidwell to refund the $300,000 payment should it terminate the RSA prior to the commencement of the sixth year of the RSA.  (*Id.* at ¶ 3.)  Additionally, on April 4, 2017, defendants Khara and Kaur entered into a Continuing Guaranty with Tesoro in which they guaranteed the full payment and performance of obligations of the station which was the subject of the RSA.  (*Id.* at ¶¶ 4, 5.)

On November 16, 2019, the station ran out of fuel to sell to consumers and the volume of sales was below 50% of the projected volume.  (*Id.* at ¶ 7.)  Plaintiff submits the deposition testimony of defendant Khara in support of its pending motion for summary judgment.  (Doc. No. 24-3 at 42.)  Defendant Khara testified at deposition that defendant Bidwell did not purchase fuel on multiple dates in December 2019 and that on January 9, 2020, the station closed.  (*Id.* at 50–51.)  Defendant Bidwell ceased operations at the station and defendants did not purchase the minimum quantity of 12,000,000 gallons of gasoline and diesel fuel products during the term of the RSA as required.  (SUF at ¶¶ 14, 16.)  The RSA contained a liquidated damages clause that provided that if the RSA was terminated prematurely, the liquidated damages shall not be less

---

[1]  The relevant facts that follow are derived from plaintiff's statement of undisputed facts ("SUF").  (Doc. No. 24-2.)  In their statement of non-opposition to the pending motion, defendants neither admit nor dispute any of the facts plaintiff proffered.  (Doc. No. 28 at 1.)  Due to defendants' statement of non-opposition to the granting of the pending motion, the facts in this section are treated as undisputed for purposes of resolution of the pending motion.  *See* Fed. R. Civ. P. 56(e) ("If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may:  . . . (2) consider the fact undisputed for purposes of the motion[.]").

than $.03 per gallon for each gallon not purchased by defendant Bidwell as required for the minimum quantity. (*Id.* at ¶ 15.) Plaintiff demanded payment from defendant Bidwell in the amount of $629,847.36 and defendant did not pay the demanded amount. (*Id.* at ¶¶ 8, 18.)

Plaintiff paid an incentive payment in accordance with the Incentive Agreement to defendants. (*Id.* at ¶ 20.) As noted above, the station ceased operations in early 2020, three years after plaintiff and defendants entered into the RSA. Plaintiff demanded repayment of the $300,000 incentive payment from defendants Kaur and Khara and defendants also did not repay that amount. (*Id.* at ¶ 22.)

**B.      Procedural Background**

On November 15, 2023, plaintiff filed its complaint in this action asserting the following two state law claims against defendants: (1) breach of contract against defendant Bidwell for breaching the parties' agreements by, among other things, ceasing operations of the station; and (2) breach of contract against defendants Khara and Kaur by failing to pay the amounts due under the agreements. (Doc. No. 1 at ¶¶ 26–38.) On July 18, 2025, plaintiff filed the pending motion seeking summary judgment in its favor as to all of plaintiff's claims.[2] (Doc. No. 24.) On July 21, 2025, the court directed plaintiff to file within fourteen days a certification indicating that it has complied with the undersigned's standing order by exhausting meet-and-confer efforts. (Doc. No. 25.) On July 31, 2025, plaintiff filed a declaration indicating that it had exhausted those efforts. (Doc. No. 26.) On August 27, 2025, the court ordered defendants to file an opposition or statement of non-opposition by no later than August 29, 2025. (Doc. No. 27.) On August 30, 2025, defendants filed their statement of non-opposition to the pending motion. (Doc. No. 28.)

/////

/////

/////

_____

[2] Plaintiff styles its motion as one for "partial summary judgment." (Doc. No. 24 at 1.) Nevertheless, plaintiff argues that "there remain no genuine issues of material fact" as to any claim in this action and appears to contend that the only unresolved issue will be whether costs and attorneys' fees should be awarded and in what amount. (Doc. No. 24-1 at 17.) Accordingly, the court construes the pending motion as a motion for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party will bear the burden of proof on an issue at trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586–87 (citations omitted).

/////

/////

5

**DISCUSSION**

Plaintiff argues that there is no genuine dispute of material fact as to whether defendants are liable for breach of contract, specifically for breach of the RSA, the Incentive Agreement, and the Continuing Guaranty.  (Doc. No. 24-1 at 9–17.)  A claim for breach of contract requires:  (1) the existence of a valid contract; (2) plaintiff's performance or excuse for non-performance; (3) defendants' breach; and (4) damages.  *See Cent. Valley Concrete, Inc. v. Rd. & Highway Builders, LLC*, No. 1:16-cv-01374-DAD-MSJ, 2017 WL 3172980, at *3 (E.D. Cal. July 26, 2017).

Plaintiff has presented undisputed evidence of the existence of the RSA, the Incentive Agreement, and the Continuing Guaranty by attaching signed copies of those agreements to its motion for summary judgment.  (Doc. No. 24-3 at 57–134 (copy of the RSA), 140–49 (copy of the Incentive Agreement), 151–57 (copy of the Continuing Guaranty).)  Defendants have not disputed the validity of these agreements and, upon review of the evidence before it on summary judgment, the court has not discerned any grounds upon which to find these agreements invalid.  *See Cetera Advisor Networks LLC v. Protective Prop. & Cas. Ins. Co.*, No. 2:19-cv-00299-DAD-JDP, 2024 WL 4347399, at *8 (E.D. Cal. Sept. 30, 2024) (finding no genuine dispute of material fact as to validity of agreement where the defendant did not argue that the agreement was invalid).  Accordingly, the court concludes that there is no genuine dispute of material fact as to whether the RSA, the Incentive Agreement, and the Continuing Guaranty constitute valid contracts.

Similarly, it is undisputed that plaintiff performed its obligations under these contracts.  Specifically, plaintiff made the required incentive payment of $300,000 and there is no evidence in the record before the court on summary judgment that plaintiff failed to deliver gasoline products when ordered by defendants.  (Doc. No. 24-2 at ¶¶ 2, 20.)  The court therefore also concludes that there is no genuine dispute of material fact as to whether plaintiff satisfied its obligations under the contracts.

Plaintiff argues that defendant Bidwell breached the RSA by terminating the contract early and failing to purchase the requisite 12,000,000 gallons of gasoline products.  (Doc. No. 24-

6

1 at 10–11.)  It is undisputed that the RSA term commenced in April 2017, as described above. At defendant Khara's deposition, he testified that he believed that the franchise relationship with the station had terminated on February 25, 2020, well before the 10-year commitment requirement set out in the RSA.  (Doc. No. 24-3 at 52–53.)  Moreover, plaintiff has come forward in its motion with a document identified by defendant Khara at his deposition as an "Amended Notice of Termination."  (Doc. No. 24-3 at 52–54, 159–65.)  That notice of termination indicates that the parties terminated the RSA and the franchise relationship on February 25, 2020.  (Doc. No. 24-3 at 159.)  Accordingly, the court concludes there is no genuine dispute of material fact as to whether defendant Bidwell breached the RSA.

Plaintiff argues that this breach proximately caused it to sustain damages, as already pre-determined by the liquidated damages provision in the RSA.  (Doc. No. 24-1 at 11–13.)  "Under California law, contractual liquidated damages provisions are presumed valid."  *Tesoro Refin. & Mktg. Co. LLC v. S&S Fuel, Inc.*, No. 19-cv-01418-DOC-ADS, 2020 WL 3203057, at *4 (C.D. Cal. Mar. 30, 2020) (citing Cal. Civ. Code § 1671(b)).  "The burden of proving that the liquidated damages clause is unreasonable at the time the contract was made is placed on the defendants." *Id.* (citing *Atel Fin. Corp. v. Quaker Coal Co.*, 132 F. Supp. 2d 1233, 1244 (N.D. Cal. 2001), *aff'd*, 321 F.3d 924 (9th Cir. 2003)).  The undisputed evidence before the court on summary judgment supports the claim that plaintiff sustained damages as a result of defendant's breach because plaintiff lost sales as a result of that breach.  *See Tesoro*, 2020 WL 3203057, at *6 (finding that the cessation of a contract for purchase of a certain quantity was a breach which caused damages to the plaintiff).  Because defendants have not challenged the validity of the liquidated damages provision, the court concludes that there is no genuine dispute of material fact as to whether plaintiff is entitled to the stipulated damages set forth in that provision of the agreement.

Plaintiff next argues that defendant Bidwell breached the Incentive Agreement and caused plaintiff to suffer damages by failing to reimburse plaintiff for the $300,000 incentive payment it had earlier made following termination of the RSA.  (Doc. No. 24-1 at 13–14.)  As detailed above, it is undisputed that plaintiff was not reimbursed upon termination of the RSA, that the

7

Incentive Agreement required reimbursement should the RSA be terminated prior to the commencement of its sixth year, and that the RSA was terminated a mere three years into its enactment. Accordingly, the court concludes there is no genuine dispute of material fact that defendant Bidwell breached the Incentive Agreement and thereby caused plaintiff to suffer damages of $300,000.

Plaintiff next argues that defendants Kaur and Khara breached the Continuing Guaranty by failing to reimburse plaintiff for the damages it suffered as a result of defendant Bidwell's breaches. (Doc. No. 24-1 at 14–15.) As described above, the Continuing Guaranty required defendants Kaur and Khara to guarantee full payment and performance of all obligations which arose under the RSA and the Incentive Agreement. Accordingly, defendants Kaur and Khara are liable as guarantors for defendant Bidwell in its breach of the RSA and the Incentive Agreement. *See Tesoro*, 2020 WL 3203057, at *6 (finding that the guarantor of a gasoline station's agreement to purchase minimum quantities of gasoline and petrol products was liable for the station's breach of that agreement). It is undisputed that defendants Kaur and Khara have not paid plaintiff for the damages it has incurred. (SUF at ¶¶ 22.) Therefore, the court concludes there is no genuine dispute of material fact that defendants Kaur and Khara breached the Continuing Guaranty and have caused plaintiff to suffer damages as a result.

Finally, plaintiff argues that it is entitled to an award of reasonable costs and attorneys' fees pursuant to California Civil Code § 1717. (Doc. No. 24-1 at 15–16.) California Civil Code § 1717 provides that "where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." Cal. Civ. Code § 1717(a). For this statute to apply, "the contract must contain a provision stating that attorney's fees incurred to enforce the contract shall be awarded either to one of the parties or to the prevailing party." *In re Penrod*, 802 F.3d 1084, 1087 (9th Cir. 2015); *see also G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, 126 F.4th 1367, 1375 (9th Cir. 2025) (finding that an appropriate

/////

8

first step in the § 1717 analysis is determining which claims fall within the scope of the attorneys' fees clauses in a contract).

Here, plaintiff contends that the parties agreed to pay attorneys' fees in a breach of contract action between them based on § 20 of the RSA. (Doc. No. 24-1 at 15–16.) A review of this section of the agreement shows that it does not pertain to attorneys' fees for actions between the parties to enforce the RSA but instead is related to indemnification for the costs related to defending against a third-party claim. (Doc. No. 24-3 at 76) ("To the extent permitted by law, retailer shall indemnify and defend [plaintiff] against all claims, damages, judgments, liens, penalties, and expenses, . . . whether incurred for an indemnified party's primary defense or for enforcement of its indemnification rights."). "An indemnity clause providing for indemnification of attorneys' fees relating to defending a third-party claim does not create any right to prevailing party attorneys' fees in an action on a contract." *United States v. NEI Contracting & Eng'g, Inc.*, No. 12-cv-00329-DMS-MDD, 2013 WL 12100703 (S.D. Cal. Jan. 28, 2013) (citing *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949 (1993)); *see also Campbell v. Scripps Bank*, 78 Cal. App. 4th 1328, 1336–37 (2000) ("However, the inclusion of attorney fees as an item of loss in a third party claim indemnity provision does not constitute a provision for the award of attorney fees in an action on contract as is required to trigger operation of Civil Code § 1717."). Accordingly, the court cannot conclude that the provision of the agreement cited by plaintiff in its motion for summary judgment supports an award of attorneys' fees in this action.

Plaintiff argues that it is also entitled to attorneys' fees because it will prevail on its breach of contract claim related to the Incentive Agreement. (Doc. No. 24-1 at 16.) It argues that the Incentive Agreement contains a provision for the award of attorneys' fees should plaintiff have to enforce its rights under the contract. (*Id.*) However, where there are multiple contract claims in a single action, the district court should "review[] its overall 'tally' of claims, along with pertinent equitable considerations relating to the parties' goals and achievements throughout the litigation" to determine who the prevailing party is. *G.P.P., Inc.*, 126 F.4th at 1375. Plaintiff has not presented the court with any briefing addressing other equitable considerations, its goals in the litigation, or any authority to support a claim that it is entitled to full recovery of attorneys' fees

9

where only one claim falls under § 1717. The court therefore declines to determine whether plaintiff is entitled to attorneys' fees at this time as premature in light of these deficiencies, without prejudice to plaintiff filling a properly supported motion for attorneys' fees.

## CONCLUSION

For the reasons above,

1. Plaintiff's motion for summary judgment (Doc. No. 24) is GRANTED in part as follows:

   a. Plaintiff's motion for summary judgment in its favor as to its first claim for breach of contract against defendant Bidwell Folsom is GRANTED;

   b. Plaintiff's motion for summary judgment in its favor as to its second claim for breach of contract against defendants Harpinder Singh Khara and Varinder Kaur is GRANTED;

   c. Plaintiff's motion for an award of attorneys' fees and costs is DENIED without prejudice to the filing of a properly supported motion regarding the award of attorneys' fees and costs;

2. The Clerk of the Court is directed to ENTER judgment in favor of plaintiff; and

3. The Final Pretrial Conference currently set for February 23, 2026 and the Jury Trial currently set for March 17, 2026 are hereby VACATED.

IT IS SO ORDERED.

Dated:   **January 15, 2026**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

10